Good morning, your honors. My name is Tony Balskowicz. I represent the plaintiff and appellant Sean Barnett. Probable cause to arrest did not exist in this case, and the district court got it wrong because it overlooked one disputed and one undisputed fact. And that fact was, the undisputed fact was that Mr. Barnett was searched at the door. He said he was searched, and nobody from the defense side could say that he was not. Did the arresting officer know that? We will come to the disputed fact, which was the second one, which was he said that he was searched at the top of the stairs. Officer Anderson said he was at the top of the stairs. That's where he was, that the stairway was narrow, nobody could get by him, and therefore he needed he would have either done it himself, which he denied, or he would have seen it. But we also have policy and procedure, which is where Anderson said he should have been searched, that was the policy that he should have been searched, and the fact that he was a doorman and that doormen oftentimes carry weapons, they should be searched. So there should have been an expectation that he had been searched. There was agreement among the agents who were deposed on what the agency procedure was in regard to searches, or was there not? There was no agreement on that. However, this is a summary judgment case. I'm entitled to an inference. If one said that there is a policy, I get it. This is not a jury trial. All right? I get it. Well, the problem that we have, I really think, is from Brom v. Bogan. You've read that case, I suspect, which says once probable cause to arrest someone is established, a law enforcement officer is not required to investigate independently every claim of innocence, whether the claim is based on mistaken identity or any other defense. So what we're really looking at is the fact that the gun was registered to your client, the fact the gun was in an ankle holster, which made it easier to conceal, the fact that he was a doorman, and I'm only reading the facts the district court put together, meaning that he was handling the money for the adult-oriented event, which would make the officer believe he was armed, that he was never outside the presence of officers after being first approached until he entered the room, and that the gun was found in a place which is adjacent to where he was seating while waiting for his interview. That's the bottom line. Is that enough to give probable cause? No. Well, I understand your argument, but I guess now I'm understanding what probable cause exists when facts known to the officers indicate that there's a fair probability or substantial chance of criminal activity. I understand. But there's a fact that was left out. Well, but that's why BOEM is important. It isn't important that the officer go through every fact that there might be in order to find this claim of innocence. The fact is if he finds that probable cause has been established, he can do what he has to do. But, for example, you can't ignore the facts that you know. This was his place of business. This gun was not found in an interview room in a police department, nor was it found in the backseat of a police car. You can't ignore an important fact. Let me give you an example. What if there was an additional fact that the officer knew was that Mr. Barnett was naked? Now, they could say all of those facts that they knew, but if they leave out a fact, this Court could then say, well, they don't have to investigate that further. We didn't know. He may have been wearing a pair of shorts. Let me give you an example of taking out of here, of what we have here. Judge X is seen by a U.S. marshal on a street. Judge X goes through the metal detector, but the marshal knows that sometimes the judge bypasses it. Judge X goes to his chamber, sits there for an hour, and leaves. The marshal walks in. He finds a gun and an ankle holster in the chambers on the floor. Is there a probable cause to arrest that judge? No. Not in a million years. You won't find a case like this because I don't believe a prosecutor would ever charge it. Well, they might not charge on what you said, but there was something additional in this case, wasn't there? I can't see it. What additional would there be? Who was the gun registered to? It was his gun. Who was the registered owner of the gun? It was Mr. Barnett's gun, but it was in his place of business. Under California Penal Code. You may not have heard my statement, so I'll ask you again. I'm sorry. Who was the gun registered to? It was registered to Mr. Barnett. And when did the police know that? They knew that after they found it. They knew that after they made an inquiry, after they found it. They found out who it was. They initially thought it might have been one of them who had lost it. Right. But then they called and they said, this is Mr. Barnett. Is that significant? Is that significant that the gun was registered to him? Yes. Of course it is. It would put suspicion on him. But the crime is not one of possession. The crime was one of concealment. And there's a big difference. And if he had been searched on the street, and if he had been searched at the top of the stairs in Mr. Anderson's presence. The difficulty, counsel, and you must have argued a number of cases, we're going to decide this case on the record. And whether he was searched is a disputed fact on this record, isn't it? Yes and no. No. It is undisputed that he was searched. I'm going to stop asking you questions. Oh, no. Because if the answer is yes and no, it's of no value for me to question you further. Oh, no. He claims that he was searched twice. Nobody could say one way or another whether he was searched. And as the district court said, because he couldn't refute a fact, it was undisputed. Well, let's look at this. The gun was registered in there and owned by Mr. Barnett. It was found under near an area where he was temporarily seated. Doesn't that permit an inference he was the one who placed it there? Certainly. But when? And now, and indeed, it would be unusual for a handgun to be stored in an ankle holster on a floor underneath a couch in a smoking room accessible to both staff and patrons on a regular basis. Isn't that an equally probable inference? It is. And I don't believe it. It's more likely that the gun and the holster were stashed there as a temporary hiding place than that it's there. It's always been stored there. It's in the holster. It's on the floor. It's under the couch. And it's in a smoking room. I understand that. But the question is, when did it get there and how? Is there enough? Well, since he was not constantly supervised, isn't it normal or probable that he had the opportunity to remove it from his ankle and slide it under the couch while sitting there without the officers noticing? That is all possible. Well, that's all we're looking for here, probable cause. No, there's a difference between possible and probable. Mere suspicion is not enough. And the decision was simply not enough. I can understand mere suspicion is not enough. But, again, I'm back to Brougham versus Bogan. The officer isn't required to investigate independently every claim of innocence that a good lawyer like you will come up with afterwards. What the good officer is supposed to do is go on whether there's enough or probable. And what about the other factors that the officers did know? For instance, he was the doorman. He was handling the cash. Didn't the officer indicate that in his experience that individuals in that situation can be armed? Oftentimes, but then later at page 65 in tab 49-6, he said he exaggerated that testimony. When he said oftentimes, and I asked him, and then he said he exaggerated it. I agree with Judge Smith. It comes down to what do the three judges here think is reasonable. All right? Well, my worry is that if we go through and we've had quite a good little give and take here, then the second issue is qualified immunity. And the qualified immunity probable cause is a fluid concept, but it's not, as Judge Posner said, you can't go to the absurd. And it would be. Judge Posner. Yes. Is he somebody I'm supposed to follow right behind? No. Well, I don't know. That would depend upon your viewpoint. He's good authority for me to read, but he's not somebody who I follow. He does make good sound bites. All right. Yeah, more than good. Thank you. Thank you. May it please the Court. My name is Harry Gower with the California Department of Justice, here representing appellees.  As you know, Mr. Barnett was arrested in August 2008 pursuant to California Penal Code 12025, subdivision A-2. As the Court has probably noticed, that section was reenacted as Penal Code Section 25400, effective January 1, 2012. Subsection A of 25400 continues subsection A of the former section 12025 without substantive change. It just made a small change to make it more gender neutral, and that's it. And I apologize for not bringing that to the Court's attention at the time. In his brief at page 25, appellant states that the issue here is whether a crime actually occurred. And he actually, and he even underlined the words, actually occurred. And that is not, has never been and never will be the test in deciding probable cause, whether that exists. Conclusive evidence of guilt is not necessary to establish probable cause. And this Court has held that where the underlying facts are undisputed, the district court must decide that issue on summary judgment, which is what happened here. So we look at the ---- You would agree that there's disputed evidence about who was in the room first and whether it's the policy of the ABC to search all detainees, right? You'd agree that that's disputed? There's evidence going both ways? We did not, we did not dispute that there may have been people in the room when Mr. Barnett was escorted into the room. But what is undisputed is Officer Anderson's testimony that Mr. Barnett was at times unattended by officers. That wasn't my question. My question was, did you agree that it's disputed who was in the room first? And you agree that it is, that who, whether it's the policy or not of ABC to search all detainees is also disputed, correct? We do not dispute that there may have been people in the room when Mr. Barnett was let in. You can answer my question, yes, then. Would you ask it again, please, Your Honor? Well, all I was saying, it's disputed who was in the room first. You're about to say yes. Yes, we didn't dispute it below, but yes. All right, so it's disputed whether it was the policy of ABC to search everyone. Yes. That's all I wanted. How would the officers know that Mr. Barnett didn't have a permit? They asked him when they took him into custody. They asked him that. Is that dispositive? No, I don't think it was. I mean, certainly it would have been the first thing out of his mouth when they arrested him. I have a permit for this. But it was not relied on below. That was not one of the undisputed facts relied on below to where the court found that probable cause was established. And we did not dispute below that he was searched. Whether the policy exists or not, Mr. Barnett claims he was searched. We did not dispute that. Did anyone research the room before anyone even was placed in the room? There's no evidence in the record of that, so. Isn't that helpful? Wouldn't that be helpful to establish probable cause? To have determined whether the room had been searched beforehand? Yes. It would have, well, by the time, no, probable cause was already established with the facts that the officers knew. That is something, that is an investigation that they could have done, continued to do, but it was not necessary. Once the probable cause was established based on the facts they knew, they have no need to continue their investigation. I have no other questions. I have no questions. All right. I'll just quickly wrap up. Mr. Barnett did not dispute the following facts, and the district court correctly determined they were sufficient to establish probable cause. One, the gun belonged to him. Two, it was in an ankle holster. Three, Mr. Barnett was standing on the sidewalk when the ABC agent's contact with him. Four, he was escorted upstairs by those agents. The gun was found in the room next to where he had been placed by the ABC agents. And he spent some time, that's what the district court relied on. There's other evidence that is undisputed. As the district court pointed out, he did not have any evidence that disputed Officer Anderson's statement that Mr. Barnett had been unattended at times by ABC agents. And even had a constitutional violation occurred, the district court was correct when it ruled that the undisputed facts were sufficient to show that the officers had acted reasonably and that they were therefore entitled to qualified immunity. Tellingly, appellant has not cited a one case that would have alerted the officers that they were violating clearly established law. Thank you. If there are no other questions, I will submit. Thank you. Thank you. Did you reserve some time, Counselor, or did we give you the business all the time? You got three minutes. Three seconds. Do you want to say something? Three seconds? No, Your Honor, I think that I pretty much said it. Well, we thank you, both of you, for coming. Thank you very much. Case 11-16797 is hereby submitted.
judges: Burgess, Farris, Smith